IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE L. ECHOLS JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20 C 02226 ) |
| OFFICER PETER NIZNIK, STAR #9182, OFFICER ERIK ALBRIGHT, STAR #11522, CPD SUPERINTENDENT EDDIE JOHNSON, FRATERNAL ORDER OF POLICE CHICAGO LODGE NUMBER 7, CITY OF CHICAGO, | ) Judge John J. Tharp, Jr. ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER**

As stated in the Court's prior order [71], and for the reasons set forth in the Statement below, the defendant Officers' partial motion to dismiss [21] is denied. Defendants Johnson and City's motion to dismiss [26] and defendant Fraternal Order of Police's motion to dismiss [34] are granted. The *Monell* claim is dismissed without prejudice, and the plaintiff may amend by 4/28/2022. The conspiracy claim against the City and the Fraternal Order of Police is dismissed with prejudice. The Fraternal Order of Police's motion for sanctions [44] is granted. The Fraternal Order of Police is directed to file a brief proposing the amount of sanctions by 4/14/2022. The plaintiff's motion to strike [55] is denied as moot.

**STATEMENT**

Andre Echols alleges that Officers Peter Niznik and Erik Albright arrested him under false pretenses and executed an unconstitutional search of his car in violation of the Fourth and Fourteenth Amendments. Mr. Echols filed this suit against the arresting officers, Chicago Police Department Superintendent Eddie Johnson, the Fraternal Order of Police Chicago Lodge Number 7 ("FOP"), and the City of Chicago in state court. Mr. Echols initially brought only common law claims and amended his complaint in state court to add claims under 42 U.S.C. § 1983; the City then removed the case to federal court. The operative complaint is the Second Amended Complaint ("SAC"). ECF No. 16. The defendants filed three motions to dismiss pursuant to Rule 12(b)(6): a joint partial motion by the defendant Officers, a joint motion by Johnson and the City, and a motion by the FOP. The FOP also filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11(c) and 28 U.S.C. § 1927.

For the purposes of these motions, the Court treats the following allegations of the SAC as true. In the early morning of February 24, 2019, Andre Echols was driving south on North Sheridan

Road in his red 2008 Chevrolet Corvette. He had his front headlights on. Officer Niznik and Officer Albright were driving north and made a U-turn to stop Mr. Echols. The Officers claimed that they stopped Mr. Echols for driving without headlights and without the front license plate on his car.[1] Mr. Echols gave the officers his Indiana commercial driver's license. The officers did a background search for Mr. Echols; they found that Mr. Echols' Illinois license had been surrendered to the State of Indiana for his Indiana commercial driver's license. But the Officers arrested him for driving on a suspended license and impounded his car. The Officers conducted an inventory search of the vehicle and falsely claimed that they discovered a controlled substance in a gum container. Mr. Echols alleges that the Officers falsely claimed in their report that he was driving with no headlights and that he was driving on a suspended license. Mr. Echols was charged with felony possession of a controlled substance and was detained until shortly after the felony charge was dismissed. He was released from the Cook County Department of Corrections on April 3, 2019, more than a month after his arrest. While Mr. Echols was detained, he lost his job, his apartment, incurred storage fees for his car, and suffered emotional distress.

When evaluating motions to dismiss, the Court takes the facts alleged in the complaint as true and makes all reasonable inferences in favor of the plaintiff. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege "facts that show the claim is 'plausible on its face.'" *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. The Officers' Partial Motion to Dismiss

The Officers move to dismiss Count IX, which asserts negligent infliction of emotional distress. They argue that they are immune from liability for negligent acts under Illinois law, so the negligence claim must be dismissed. In making this argument, however, the Officers have overlooked the distinction between claims—which are subject to dismissal pursuant to Rule 12(b)(6)—and legal theories—which are not. "Complaints plead *claims*, which is to say grievances." *ACF 2006 Corp. v. Mark C. Ladendorf, Att'y at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) (emphasis in original). "[A] claim is 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Florek v. Vill. of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943)). At the motion to dismiss stage, the Court has the authority to dismiss deficient claims, but it cannot dismiss legal theories. Fed. R. Civ. P. 12(b)(6); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") (emphasis in original). As long as a discernable legal theory plausibly provides a remedy for a claim, a motion to dismiss a second legal theory invoked to support that claim must be denied. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) ("One claim supported by multiple theories does not somehow become multiple claims.").

The claim that is relevant to the Officers' motion is that by arresting Mr. Echols and searching his car under false pretenses, the Officers caused him severe emotional distress. The

---

[1] The SAC does not allege that the Officers' assertion that the car was missing a front license plate was false.

Officers' motion does not challenge that claim; rather, it challenges the viability of one of the two legal theories the SAC invokes in support of that claim. Assuming for the sake of argument that the Officers are right about immunity, the emotional distress claim would still survive under the intentional tort theory; it cannot be dismissed simply because one of the legal theories the plaintiff has proffered is infirm. Indeed, the plaintiff was not required to set forth in the SAC the legal theories that support his claim; he could have omitted separate "counts" and simply set forth the facts on which his emotional distress claim is based. That would leave no "count" alleging negligence to be dismissed. Unless there is no legal theory that can be invoked to plausibly entitle the plaintiff to legal relief on a claim, a motion to dismiss pursuant to Rule 12(b)(6)—which authorizes challenges to claims rather than legal theories—is misconceived. The mechanism for challenging the viability of multiple legal theories offered in support of a claim is Rule 56 (summary judgment); not Rule 12(b)(6). Accordingly, the Court must deny the Officers' motion to dismiss Count IX of the SAC.

### B. Johnson and the City's Motion to Dismiss

Johnson and the City move to dismiss the *Monell* claims against Johnson and the conspiracy claim against the City. For the following reasons, that motion is granted. The Court notes that the complaint does not specify whether Mr. Echols sues Johnson in his official or personal capacity, but the plaintiff notes in his response to this motion that he sues Johnson in his official capacity. Claims against Johnson in his official capacity "are effectively claims against the City." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 n.4 (7th Cir. 2004).

#### 1. *Monell* Claims

A municipality may be liable under section 1983 for its own violations of the Constitution; the actions that could lead to municipal liability include official policies or pervasive practices that are so established that they are customs or practices of the municipality. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). To adequately plead his *Monell* claim, Mr. Echols must also allege a custom or practice of constitutional violations, that "the custom or practice is the result of deliberate indifference on the part of policymakers," and that "the custom or practice caused the alleged harm." *Taylor v. City of Chi.*, No. 21 CV 2197, 2021 WL 4523203, at *2 (N.D. Ill. Oct. 4, 2021) (citing *Calderone v. City of Chi.*, 979 F.3d 1156, 1163 (7th Cir. 2020)).

Mr. Echols fails to allege that the City has express policies or practices that caused his injuries. In his complaint, Mr. Echols alleges two broad policies. First, he alleges that the City's policy or custom was "to fail to exercise reasonable care in hiring its police officers." SAC ¶ 34. His complaint states that the test used to determine an applicant's fitness as a police officer did not adequately test for dishonesty or individuals likely to abuse their power or harass minorities. Mr. Echols does not allege any specific deficiencies with the test or other facts that might support his conclusions; instead, his complaint is wholly conclusory as to the existence of this practice.

Second, Mr. Echols alleges that the City inadequately trains and supervises its police officers, including the arresting officers. He again makes conclusory allegations that the City and Chicago Police Department "inadequately train and supervise its officers, including Defendants Niznik and Albright." SAC ¶ 35. Courts have upheld failure to train or supervise claims when the

plaintiff alleged the type of training or supervision that was missing or deficient. *See Flores v. City of S. Bend*, 997 F.3d 725, 732-33 (7th Cir. 2021) (listing cases). Mr. Echols alleges that the arrest would not have occurred if the Officers had been properly trained and supervised, but he does not specify the kind of training or supervision that the City failed to provide and that would have prevented the Officers' conduct. That boilerplate allegation—"failed to train"—is insufficient.

In Mr. Echols' response, he does not address either of the policies that he alleges in his complaint. Instead, he argues that the Chicago Police Department has a practice of harassing African American drivers by disproportionately subjecting them to traffic stops.[2] Defendants Johnson and the City contend that Mr. Echols attempts to improperly amend his complaint in his response to their motion to dismiss. A plaintiff may include additional facts that are consistent with his complaint in his response to a motion to dismiss, but he may not amend his complaint by adding new claims in his response brief. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("Although a plaintiff may assert additional facts in a motion to defeat dismissal, he … cannot amend his … complaint to state new claims in such a motion."). Mr. Echols attempts to add a new claim. His claim that the City has a policy of racially profiling African American drivers relies on both new factual allegations and a new legal theory, the Equal Protection Clause of the Fourteenth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment."). While he did raise the Equal Protection Clause as a legal theory for his claims against the Officers, his Equal Protection claim against Johnson and the City only arises in his response to their motion to dismiss and relies on factual allegations that he did not include in his complaint.

And even if Mr. Echols had included these allegations in his complaint, they do not state a claim for relief. Mr. Echols cites a study by the American Civil Liberties Union from January 2019 that found that minority drivers in Chicago were stopped more often than white drivers and that African American drivers in particular were over-represented in traffic stops. Pl.'s Resp. to Johnson & City's Mot. to Dismiss 2-3, ECF No. 42. But allegations that African American drivers are stopped more often than white drivers do not plausibly show that the reason was race; that's correlation, not causation. And even assuming that the pattern of stopping more black drivers is due to race and that Johnson was aware of the pattern, that would not plausibly show whether harassment of African American drivers was occurring because of deliberate indifference on the part of the department or the City. Nor would it show that such a policy was the cause of Mr. Echols' traffic stop; while he maintains that the Officers falsely reported that he was driving without headlights and on a suspended license, he does not claim that his car was not missing the required front license plate. *Petropoulos v. City of Chi.*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) (plaintiff must allege "that the policy or custom was the '***moving force***' behind the constitutional violation") (emphasis added). Mr. Echols reiterates, moreover, that these particular Officers "both had a predilection to flouting and disobeying rules," Resp. to Johnson & City's Mot. to Dismiss 4, a charge that runs counter to his theory that the Officers were complying with City policy when they stopped him. It may be possible for Mr. Echols to properly allege that the alleged policy caused his stop, but he will need to amend his complaint to do so.

---

[2] Mr. Echols describes himself as a black man in his complaint. SAC ¶ 2.

### 2. Conspiracy Claim

Mr. Echols also fails to state a conspiracy claim under section 1983. "To establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 518 (7th Cir. 2020) (quoting *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000)).

The SAC alleges that the FOP and the City conspired to "grant members of the FOP rights over and above the rights enjoyed by other citizens of Chicago, including the plaintiff," in violation of the Equal Protection Clause by entering into a collective bargaining agreement with a "Bill of Rights" for officers under investigation and in disciplinary proceedings. SAC ¶ 39. The plaintiff does not allege that the FOP and the City agreed to deprive **him** of his constitutional rights. The City contends that Mr. Echols' general claims that the collective bargaining agreement violated his rights are insufficient to state a claim for a conspiracy to violate his rights under the Equal Protection Clause of the Fourteenth Amendment. The Court agrees that Mr. Echols' allegations regarding the collective bargaining agreement are implausible and that the collective bargaining agreement is wholly unrelated to the underlying deprivation that he alleges.

Another court in this district dismissed a substantially similar claim by another plaintiff represented by Mr. Echols' counsel as time barred and granted the FOP's motion for sanctions. *Bell v. Stanek*, No. 14 C 6627, 2016 WL 3364786, at *5 (N.D. Ill. June 17, 2016) ("The equal protection claim asserted is so far from the mainstream of equal protection analysis that it cannot be fairly described as a nonfrivolous argument for extending or changing existing law."). As noted by the Seventh Circuit on appeal, no Equal Protection jurisprudence supports this claim. *Bell v. City of Chi.*, 694 F. App'x 408, 411 (7th Cir. 2017) ("[Plaintiff's counsel] admitted that he knew his claim did not fit within any equal protection jurisprudence, yet he brought his claim as an equal protection claim."). It would be improper to compare the rights of officers in disciplinary proceedings as city employees to the rights of arrestees and detainees because the respective contexts are different; Mr. Echols is not alleging that detainees are denied equal rights in the same or similar circumstances. Even if it were possible to compare these groups under the framework of the Equal Protection Clause, the City has a rational basis for negotiating the collective bargaining agreement and providing protections to its employees in disciplinary proceedings.

Mr. Echols argues that heightened scrutiny should apply because he is a member of a protected class as an African American. The relevant class, however, is not African Americans; Mr. Echols' complaint alleges that members of the FOP negotiated for more rights than ordinary citizens of Chicago. Non-union members do not represent a protected class under the Fourteenth Amendment. The Court finds that the Equal Protection Clause does not apply at all because union members' rights in employee disciplinary proceedings are not comparable to rights of arrestees and that any claim to heightened scrutiny is frivolous.

His attempts to frame these allegations as a conspiracy under Illinois law are also baseless. Mr. Echols contends that the collective bargaining agreement violates article 1, section 2 and article 4, section 13 of the Illinois Constitution. Article 1, section 2 contains the Illinois Equal Protection Clause. Putting aside the fact that the FOP likely is not a state actor in this instance,

neither provision of the Illinois Constitution provides support for Mr. Echols' claim. "Equal protection challenges brought under the Illinois Constitution are evaluated under the same standards as equal protection challenges claims under the federal constitution." *Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961, 975 n.10 (N.D. Ill. 2003) (citing *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124, 623 N.E.2d 281, 284 (1993)). That theory cannot support Mr. Echols' conspiracy claim for the reasons stated above. Article 4, section 13 states that "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." That provision limits the powers of the state legislature and has no application to collective bargaining agreements between the FOP and the City.

Finally, Mr. Echols fails to state a claim for civil conspiracy under Illinois common law. "To state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 20, 178 N.E.3d 1046, 1053. Mr. Echols does not allege a tortious act. The signing of the collective bargaining agreement or the negotiations are not plausibly tortious acts. Illinois law provides for the rights of police officers to organize and bargain collectively. *See* 5 ILCS 315/6(a). Mr. Echols argues that his false arrest qualifies as a tortious act, but that argument is frivolous. There can be no reasonable argument that arresting Mr. Echols was in furtherance of the collective bargaining agreement.

### C. The FOP's Motion to Dismiss and Motion for Sanctions

For the reasons stated above, the FOP's motion to dismiss is granted. The conspiracy claim is frivolous and fails to state a claim for relief. The Court finds that no further allegations could support this claim, and, as such, the dismissal is with prejudice. *See Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 812 (7th Cir. 2021) ("A district court does not abuse its discretion by failing to order, *sua sponte*, an amendment to the complaint that the plaintiff never requested.") (cleaned up).

The Court also grants the FOP's motion for sanctions.[3] Plaintiff's Counsel, Larry Redmond, argues that he cannot be subject to sanctions based on the second amended complaint because this claim was not amended after it was initially filed in state court. As a result, Mr. Redmond argues that sanctions based on the conspiracy claim would be improper sanctions for his conduct in state court. But whether amended in this Court or not, refiling the claim in Mr. Echols' second amended complaint in this Court means that Counsel signed and filed a complaint with a frivolous claim in federal court, not just in state court. That is clearly a violation of Rule 11(b)(2) and sanctionable conduct pursuant to Rule 11(c). *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 227 (7th Cir. 1995) ("Rule 11 sanctions could be imposed if Bisciglia signed and filed an amended complaint that violated Rule 11, or signed and filed any paper opposing the dismissal of his frivolous complaint."). By filing an amended complaint with a frivolous claim in this Court,

---

[3] The FOP followed the "safe harbor" procedure pursuant to Rule 11(c)(2) by serving Mr. Redmond with a copy of the motion by email on May 28, 2020, and informing him that the FOP would move for sanctions if the frivolous claim was not dismissed within 21 days. On August 14, 2020, the FOP filed its motion for sanctions after Mr. Redmond failed to amend or withdraw the frivolous filing.

Counsel violated Rule 11(b)(2). The Court, therefore, has the authority to sanction him under Rule 11(c) for signing a frivolous filing.

While Mr. Echols and his counsel were not specifically warned by this Court, a previous district court and the Seventh Circuit put Mr. Redmond on notice that this claim is frivolous and not founded in law nor fact. Counsel's arguments attempt to stretch Equal Protection jurisprudence beyond reason *after* both another court in this district sanctioned him and the Seventh Circuit affirmed the grant of sanctions. During oral argument before the court of appeals in 2017, Counsel "admitted that he knew his claim did not fit within any equal protection jurisprudence, yet he brought his claim as an equal protection claim." *Bell*, 694 F. App'x at 411. The Seventh Circuit affirmed the district court's sanctions, noting that the court "acted well within its discretion in admonishing Redmond for filing this legally frivolous claim." *Id.*

Counsel admits that the claim in this case is the same claim he pursued in *Bell*. Remarkably, in responding to the FOP's motion, counsel contends that this Court should deny the motion for sanctions because the *Bell* court dismissed the state law claims without prejudice to refiling in state court. While this case was initially filed in state court, the complaint alleges violations of *federal* constitutional law, and Counsel filed Mr. Echols' second amended complaint in federal court, reasserting this frivolous claim. Mr. Redmond also contends that the reason that the *Bell* court sanctioned him was because the claims "in *Bell* were not clearly drawn out, and could not have been proven." Pl.'s Resp. to Mot. for Sanctions 2, ECF No. 53. Not so. The district court stated that it sanctioned Redmond because the claim had "nothing to do with the facts presented" and "is so far from the mainstream of equal protection analysis that it cannot be fairly described as a nonfrivolous argument for extending or changing existing law." *Bell*, 2016 WL 3364786, at *5.

In filing the same claim before this Court, Counsel demonstrates that the prior sanction—an admonishment by the district court—was not sufficient to deter counsel from bringing this frivolous claim again. Counsel does not argue that something has changed since the Seventh Circuit upheld the district court's sanctions order in 2017. The Court agrees with the FOP that monetary sanctions are warranted. The Court holds that sanctions are warranted under Rule 11 and does not address whether sanctions would also be appropriate under 28 U.S.C. § 1927. The FOP is directed to file a supplemental brief that outlines the expenses it incurred in preparing its motion for sanctions, motion to dismiss, and subsequent reply briefs by April 14, 2022.

Dated: April 7, 2022

John J. Tharp, Jr.
United States District Judge

7